John Michael **WILLIAMSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 17651.

United States Court of Appeals
Ninth Circuit.

Nov. 13, 1962.

Jack Galen Whitney and Harry D. Steward, San Diego, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Division, and Meyer Newman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellant seeks reversal of his conviction for violations of 21 U.S.C.A. § 176a.[1] He contends: (1) that the indictment did not allege a violation of law, (2) that the trial court erred in denying his motion for severance, (3) that the court erred in failing to sequester the witnesses, (4) that error occurred in the admission of evidence, and (5) that the closing argument of the prosecutor was improper.

1. *Sufficiency of the Indictment.*

Appellant was named in Counts Three, Four, and Five of a seven-count indictment. Count Three alleged a conspiracy to import marihuana "contrary to law," to smuggle marihuana into the United States, and to receive, conceal, and sell such marihuana, knowing it to have been imported "contrary to law."[2] Count Four[3] alleged a sale, and Count Five[4] alleged receipt and concealment, of marihuana known to have been imported "contrary to law."

Appellant contends that all three counts were defective because each alleged that the marihuana was imported "contrary to law" without specifying the respect in which the importation was illegal and the statute which made it so. Appellant does not suggest that the omitted information was at all relevant to his defense.[5] He contends that the indict-

---

1. "Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned * * *.

   "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

2. *Count Three* alleged that beginning June 8, 1960, and continuing until August 14, 1960, appellant and three other named persons conspired to commit the following offenses against the United States: (1) "to knowingly, with intent to defraud the United States, import and bring into the United States marihuana, contrary to law," (2) "to smuggle and clandestinely introduce into the United States marihuana, which should be invoiced," and (3) "to receive, conceal, sell and facilitate the transportation, concealment and sale of such marihuana after it had been imported and brought into the United States knowing that the marihuana would have been brought in the United States contrary to law." The ob-

ject of the conspiracy was described, and four overt acts were alleged with detail as to times and persons involved, and, as pertinent, the place of a meeting, the amount of money received, the exact weight of marihuana transferred, transported, secreted.

3. *Count Four:* "On or about August 5, 1960, in Los Angeles County, California, in the Central Division of the Southern District of California, defendants DONALD ALAN CLAIR, DALE RICHARD POWERS and JOHN MICHAEL WILLIAMSON, with intent to defraud the United States, knowingly sold 4 kilograms, 536 grams of marihuana to Roland Murphy, which said marihuana, as the defendants then and there well know, theretofore had been imported and brought into the United States contrary to law."

4. *Count Five:* "On or about August 5, 1960, in Los Angeles County, California, in the Central Division of the Southern District of California, defendants DONALD ALAN CLAIR, DALE RICHARD POWERS and JOHN MICHAEL WILLIAMSON, with intent to defraud the United States, knowingly received, concealed and facilitated the transportation and concealment of 4 kilograms, 536 grams of marihuana, which said marihuana, as the defendants then and there well knew, theretofore had been imported and brought into the United States contrary to law."

5. Appellant's defense was not that the marihuana was domestically grown or legally imported, but that he had not received, concealed, or sold the marihuana, or conspired to do so.

ment was insufficient as a matter of law without regard to whether the omission could have prejudiced him.

■■ To appellant's technical argument there is a sufficient technical answer. Count Three charged a conspiracy, and "in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy ⸱ * * *. In charging such a conspiracy 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary.' " Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927).

■ In Wong Tai, the Supreme Court sustained an indictment charging conspiracy to receive, conceal, etc., opium, knowing the same to have been imported "contrary to law." Appellant suggests that Wong Tai and similar cases [6] are inapplicable because importation of the commodity involved in those cases was absolutely forbidden by law, whereas the importation of marihuana is not. But the language of the Supreme Court in Wong Tai does not support this distinction, and we have applied the rule of that case to a conspiracy charge identical to that in Count Three, even though no statute forbade the importation of the merchandise involved.[7]

Count Three was sufficient for another reason. It alleged that appellant conspired, among other things, "to smuggle" marihuana into the United States. "The use of the word 'smuggle' removes all uncertainty or ambiguity; for this word has a well-understood meaning at common law, signifying a bringing on shore, or carrying from the shore, of goods, wares, and merchandise, for which the duty has not been paid, or goods the importation or exportation whereof is prohibited." [8]

■ This is enough to dispose of the point since the appellant received identical concurrent sentences upon all three counts, and it is clear that the additional counts did not enhance the sentence on Count Three.[9]

■ Moreover, we think the substantive counts also were sufficient to allege a violation of law. As recently restated by the Supreme Court, the test is whether the omissions in the indictment "deprive the defendant of one of the significant protections which the guaranty of a grand jury indictment was intended to confer." Russell v. United States, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed. 2d 240 (1962).

■ In the present case, as in Russell, there is no doubt that the indictment met one of the two primary criteria involved in this test: the indictment was sufficient to protect appellant from again being placed in jeopardy for the same offense; the time of the offense, and the

---

6. See Medrano v. United States, 285 F.2d 23, 26 (9th Cir. 1960); Hill v. United States, 42 F.2d 812, 813–814 (4th Cir. 1930); Goldberg v. United States, 277 F. 211, 213–215 (8th Cir. 1921).

7. Steiner v. United States, 229 F.2d 745 (9th Cir. 1956). We there distinguished the authorities principally relied upon by appellant (Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899), and Babb v. United States, 218 F.2d 538 (5th Cir. 1955)) on the precise ground that they involved substantive offenses rather than conspiracies to commit such offenses. Id. 229 F.2d at 748 n. 7.

8. Hill v. United States, 42 F.2d 812, 814 (4th Cir. 1930). See Huff v. United States, 273 F.2d 56, 59 (5th Cir. 1959); Babb v. United States, 218 F.2d 538, 539–540 (5th Cir. 1955) (dictum); Hill v. United States, 42 F.2d 812, 813–814 (4th Cir. 1930); Musey v. United States, 37 F.2d 673, 674 (5th Cir. 1930).

9. The sentence on Count Three was five-years imprisonment, the minimum which the court was permitted by law to impose. 21 U.S.C.A. § 176a. Compare United States v. Hines, 256 F.2d 561 (2d Cir. 1958).

persons and amounts of marihuana involved, were precisely identified. The question is whether the allegations met the second primary criterion: whether they "sufficiently apprise the defendant 'of what he must be prepared to meet.' "[10] This is a practical question to be answered by. practical inquiry.

■ The indictment in Russell was found wanting because the court concluded from an examination of the particular criminal statute, its background, and the course of litigation under it, that the omitted allegation related to "the very core of criminality," to an issue "central to every prosecution under the statute." As the court said, "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."[11] "A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined. It enables his conviction to rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture."[12]

■ This is not such a case. As we have noted, the general allegation that the marihuana was imported "contrary to law" was of no significance to appellant's defense. This is generally true in prosecutions under 21 U.S.C.A. § 176a; legal importation is virtually nonexistent. Indeed, the statute raises a presumption, which we have held reasonable, that marihuana found in a defendant's possession has been imported illegally.[13]

An examination of the cases indicates that the summary allegation that the importation was "contrary to law" is held sufficient where (as in the case of marihuana) importation of the particular subject matter is rarely lawful and detailed allegations as to the illegality of the importation would rarely be relevant to the defense.[14] Conversely, the allegation "contrary to law" is held inadequate as a substitute for detailed allegations where the articles involved are normal objects of lawful trade and a substantial likelihood exists that the legality of the importation may be an issue of consequence.[15] We think the distinction is consistent with the rationale of Russell and rests upon a sound basis; we adhere to it.

---

10. 369 U.S. at 764, 82 S.Ct. at 1047.

11. Ibid.

12. Id. at 766, 82 S.Ct. at 1048.

13. Caudillo v. United States, 253 F.2d 513 (9th Cir. 1958). As we there said, "this Court knows of no medical or scientific use to be made of marihuana, save perhaps for occasional testing * * *." Id. at 517.

14. United States v. Davis, 272 F.2d 149, 150–151 (7th Cir. 1959) (marihuana); Pon Wing Quong v. United States, 111 F.2d 751, 754–755 (9th Cir. 1940) (opium); Hood v. United States, 78 F.2d 150 (10th Cir. 1935) (opium derivative); Wong Lung Sing v. United States, 3 F.2d 780, 781 (9th Cir. 1925) (opium). See also Brown v. United States, 222 F.2d 293 (9th Cir. 1955) (heroin); Rodriguez v. United States, 218 F.2d 810 (5th Cir. 1955) (narcotic drug); United States v. Rodgers, 218 F.2d 536 (5th Cir. 1955) (heroin); Miller v. United States, 300

F. 529, 533 (6th Cir. 1924) (intoxicating liquor). But see Current v. United States, 287 F.2d 268, 269 (9th Cir. 1961) (marihuana) (dictum). Appellant argues that the cases relating to opium depend upon the premise that the importation of opium was wholly forbidden by statute. Language in early opinions lends support to this view. However, as we have noted, opium may be imported legally (Caudillo v. United States, 253 F.2d 513, 517 (9th Cir. 1958); Hernandez v. United States, 300 F.2d 114, 118 n. 11 (9th Cir. 1962)), and in any event we think a practical approach to criminal pleading requires the application of the rule where legal importation is extremely rare as well as where it is impossible.

15. Keck v. United States, 172 U.S. 434, 437, 19 S.Ct. 254, 43 L.Ed. 505 (1899) (diamonds); Babb v. United States, 218 F.2d 538, 541 (5th Cir. 1955) (cattle). Compare Steiner v. United States, 229 F.2d 745, 748–749 (9th Cir. 1956) (psittacine birds).

## 2. Denial of Severance.

Before trial appellant moved under Rule 14, Federal Rules of Criminal Procedure, for a severance and separate trial of the three counts in which he was named as a defendant. Appellant contended that he was entitled to relief under Rule 14 because the joinder of counts in this indictment, though permissible under Rule 8,[16] would prejudice him. Appellant's showing of anticipated prejudice consisted of an assertion "that evidence that might be adduced in connection with the Counts where he is not named as a party defendant will be highly prejudicial to him, and will tend to cause the jury to become confused as to affiant's lack of participation in any of said counts * * *."

The motion was properly denied. A general unsupported assertion of prejudice was not enough to justify the severance of counts properly joined.

Appellant concedes in this Court that "It may well be that prior [to trial] * * * the trial court could not foresee prejudice to appellant," but contends that prejudice became apparent at trial and the court should then have granted relief.

Where prejudice from joinder appears in the course of trial, it has been held that the request for severance must be renewed at the close of the evidence or it will be treated as waived.[17] Appellant did not renew his request for severance at that point. His failure to do so at least suggests that the prejudice now asserted to have resulted from the joinder may not have seemed so substantial to appellant in the context of trial,[18] especially so since the court in denying the pre-trial motion for severance stated that relief would be granted if prejudice from the joinder appeared at trial.

Most of the evidence admitted at trial related to the three counts in which appellant was named and upon which he was found guilty. The greater part of the proof consisted of direct evidence of a particular sale of marihuana to an informer. The informer testified that it was appellant who delivered the marihuana to him. The transaction was observed by a number of government agents, one of whom testified that he observed appellant as he made delivery to the informer; the others testifying in detail to appellant's movements immediately preceding and following the delivery. In contrast, the evidence relat-

---

16. A misapprehension reflected in the government's brief should be corrected. Contrary to the government's assumption, factually unrelated charges against some defendants could not be joined for trial simply because all of the defendants (except one as to whom severance was granted) were jointly charged with conspiracy in Count Three of the indictment. This is true even though the charges in all counts were "of the same or similar character," and therefore under Rule 8(a), might have been joined in an indictment against a single defendant. Where multiple defendants are involved, Rule 8(b) requires that *each* count of the indictment arise out of "the same series of acts or transactions" in which all of the defendants "have participated." Ward v. United States, 110 U.S.App.D.C. 136, 289 F.2d 877 (1961); Ingram v. United States, 272 F.2d 567 (4th Cir. 1959). Since in the present case the conduct upon which each of the counts is based was part of a series of factual-

ly related transactions in which all of the defendants participated, the charges were properly joined, although the various offenses were distinct and all of the defendants were not charged in each count. See, e. g., Wiley v. United States, 277 F.2d 820 (4th Cir. 1960); Kleven v. United States, 240 F.2d 270 (8th Cir. 1957); Kivette v. United States, 230 F.2d 749 (5th Cir. 1956); Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29 (1954); Scheve v. United States, 87 U.S.App.D.C. 289, 184 F.2d 695 (1950); Cataneo v. United States, 167 F.2d 820 (4th Cir. 1948). See also Spear v. United States, 216 F.2d 185 (4th Cir. 1954); United States v. Harris, 211 F.2d 656 (7th Cir. 1954).

17. Finnegan v. United States, 204 F.2d 105 (8th Cir. 1953).

18. Neither did appellant reassert his objection to joinder in his motion for a new trial.

ing to the counts in which appellant was not named occupied but a small part of the record. It was largely indirect, and appellant's involvement was relatively remote.

Appellant was represented by his own counsel. Although the trial was lengthy, the charges and supporting facts were relatively simple. Appellant's counsel and the trial court were constantly alert to protect the appellant by appropriate instructions. There is no reasonable ground for believing that the jury was confused or that the determination of appellant's guilt was to any degree dependent upon the joinder of which he complains.

### 3. *Refusal to Sequester Witnesses.*

Appellant moved before trial to sequester all witnesses. The motion was denied.

■■■ The practice of excluding witnesses from the courtroom except while each is testifying is to be strongly recommended, particularly where the testimony of the witnesses is in any measure cumulative or corroborative.[19] It is nonetheless the uniform federal rule, prevailing also in a majority of the states, that a motion to sequester is addressed to the discretion of the trial court.[20]

We have examined the record with particular attention to the testimony of the witnesses appellant identifies as likely to have shaped their answers to those of the witnesses who preceded them. In most instances the testimony was relatively unimportant to the case against appellant. In others, the nature of the testimony was such as to convince us that the opportunity to hear prior witnesses could have had little or no effect on the particular witnesses' testimony.

■■■ On the whole we are satisfied that the trial court did not abuse its discretion in denying the motion to sequester, especially since the only alternative suggested in the record was to gather the witnesses in a common hallway adjacent to the courtroom. Although the better practice would have been to grant the motion and make whatever arrangements were necessary to limit communication among the witnesses, the record demonstrates that denial of the motion could not in fact have resulted in substantial prejudice to appellant.

### 4. *Admission of Evidence.*

Appellant questions several of the trial court's rulings on evidentiary matters. Two may merit discussion.

a. On cross-examination appellant testified that he had met the government informer on August 5th, and that he had known one of his co-defendants for a number of years. He was then asked if he had told a government agent on August 14th that he did not know either of these two men. Appellant answered: "I don't recall. I don't recall saying that." The prosecution called the government agent, who was permitted to testify over appellant's objection that on August 14th appellant had said that he did not know the two men.

■■■ Appellant argues that the government agent's testimony was not proper impeachment because appellant's out-of-court statement of August 14th was not inconsistent with his testimony that he did not recall having made it. But the impeaching testimony of the agent was directed not to appellant's answer to this foundation question of whether he had made the statement of August 14th, but rather to appellant's earlier testimony that he had known the two men

19. 6 Wigmore, Evidence §§ 1837–39 (3d ed. 1940), and cases cited. As we have said, the practice "is a time-honored one and should not be abandoned." Charles v. United States, 215 F.2d 825, 827 (9th Cir. 1954).

20. United States v. Postma, 242 F.2d 488, 494 (2d Cir. 1957); 6 Wigmore, Evidence 358–359 (3d ed. 1940). See Hanson v. United States, 271 F.2d 791, 793–794 (9th Cir. 1959), and cases cited.

prior to August 14th.[21] Appellant's extra-judicial statement to the agent on August 14th, denying that he knew the two men, was clearly inconsistent with this testimony and was thus properly admitted as impeachment. And there can be no question of the sufficiency of the foundation laid for the agent's impeaching testimony; the answer of a witness that he does not remember having made a prior inconsistent statement is as adequate a foundation as a flat denial.[22]

Appellant argues that even if the agent's testimony was admissible as impeachment, the trial court in its instructions and the prosecutor in his closing argument improperly treated the agent's testimony as affirmative evidence that appellant had in fact denied knowing the two men on August 14th. But this was not improper. Appellant's hearsay statement to the agent was properly received as a party's admission; it was relevant to show a consciousness of guilt on appellant's part.[23]

b. Appellant objected to testimony disclosing his frequent presence at the apartment of one of his co-defendants prior to the date fixed in the indictment as the beginning of the conspiracy. He insists that "mere casual association is not proof of participation in a conspiracy."[24] Of course it was not proof enough; but that is not to say that it was irrelevant to the issue. "[P]roof of * * * association or acquaintance, while not alone enough to establish the conspiracy, yet has sufficient bearing thereon to make it admissible."[25]

**5. Closing Argument.**

Appellant challenges several passages in the prosecutor's closing argument as being improper and prejudicial. We have considered each with care, and conclude that if any were of doubtful propriety they were inconsequential in the context of the presentation as a whole.

Affirmed.

---

21. Appellant's apparent misconception that the answer to the preliminary foundation question (as to whether the witness made a prior inconsistent extra-judicial statement) is the testimonial statement against which the inconsistent extrajudicial statement is to be set off, is not uncommon. 3 Wigmore, Evidence 721 (3d ed. 1940).

22. Bush v. United States, 267 F.2d 483, 489 (9th Cir. 1959); Woods v. United States, 279 F. 706, 711 (4th Cir. 1922); Searway v. United States, 184 F. 716 (8th Cir. 1910). See McCormick, Evidence 68 (1954).

23. Wilson v. United States, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Kessler, 253 F.2d 290 (2d Cir. 1958). See 2 Wigmore, Evidence § 278 (3d ed. 1940).

24. Quoting United States v. Moloney, 200 F.2d 344, 347 (7th Cir. 1952).

25. Kanner v. United States, 34 F.2d 863, 866 (7th Cir. 1929). See also Devoe v. United States, 103 F.2d 584, 589 (8th Cir. 1939); Bedell v. United States, 78 F.2d 358, 365 (8th Cir. 1935); Minner v. United States, 57 F.2d 506, 510 (10th Cir. 1932).