**Nonie TENORIO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21707.**

United States Court of Appeals Ninth Circuit.

Feb. 28, 1968.

Jon H. Kouba (argued), San Francisco, Cal., for appellant.

Edward E. Davis, U. S. Atty., Morton Sitver (argued), Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLIN, DUNIWAY, and ELY, Circuit Judges.

ELY, Circuit Judge:

In a jury trial, appellant Tenorio was found guilty of having unlawfully imported approximately two ounces of heroin into the United States, a violation of 21 U.S.C. § 174. Having waived indictment, the appellant was prosecuted under an information which charged that he, together with his brother, a codefendant in the court below,[1] "contrary to law, knowingly imported and brought approximately two (2) ounces of heroin, a narcotic drug, into the United States * * *." It is here claimed, for the first time, that the information was fatally defective.

Appellant and his brother were the only two occupants of an automobile which entered the United States from Mexico on August 9, 1966. When the automobile came to the border from the Mexican side, an immigration inspector requested that its trunk be opened. After appellant opened the trunk, the officer requested that the vehicle be driven to a secondary inspection station. Notwithstanding the request, the automobile was driven away at a rapid speed. A witness observed the vehicle as it was driven into a parking lot in the border town of San Luis, Arizona. This witness testified that from a distance of "not over 50 yards" he observed the appellant's brother "get out [of the automobile] and close the door and walk over towards the front of the bank, and then walk around the bank * * *." The witness went on to state that the brother then "scooped up something in the ground, and laid his hand in the ground and covered it up." The witness informed one Goff, a customs port investigator, of his observations, and Goff, having located the Tenorio brothers in the restroom of a nearby service station, returned them, with their automobile, to the port of entry. They were detained for about six hours. During that time, a search of the automobile was conducted, and it resulted in a discovery of certain paraphernalia of the kind employed by narcotics users in administering drugs to themselves. Goff also discovered two packages, wrapped in a handkerchief, under some sand in the vicinity where appellant's brother had been observed by the witness. Subsequent examination and analysis revealed that one of the packages contained heroin. Dummy packages were prepared to resemble the original ones and were sprinkled with a chemical dust which, upon coming in contact with the moisture of human skin, would color the skin indelibly blue. The dummy packages were then placed in the location where the package of heroin had been discovered. The location was kept under constant surveillance and eventually, during the morning of August 14, 1966, appellant's brother was observed as he walked to the location, picked up something with his hand, and entered an automobile which appellant was driving. The car was pursued and finally stopped in an alfalfa field. When the brothers were then arrested, it was seen that there was a smudge of coloring on the appellant's right temple and that his brother's hands and forearms were colored purple from the chemical dust which had been sprinkled on the dummy packages.

The appellant did not testify. His brother testified that the two, both heroin addicts, had gone to Mexico on August 9, 1966, for the purpose of purchasing heroin, but had been unable to complete the purchase in Mexico. The

1. The appellant's brother was also convicted in the trial but did not appeal.

brother explained that he delivered the purchase money in Mexico and was told to telephone for instructions after he had reentered the United States. He further testified that upon being released from custody on August 9th, after the border detention, he made the telephone call for instructions and was told that the heroin was behind the bank. The thrust of this testimony, which the jury obviously disbelieved, was that the brothers had not imported the contraband, but had come into its possession for the first time in this country.

■ In his appeal, the appellant raises three points, one of which, that pertaining to the alleged defectiveness of the information, has already been mentioned and will be discussed subsequently. The other two have no merit whatsoever. Both pertain to argument made by the prosecuting attorney in his summation to the jury. Certain questions and answers appear in the cross-examination of appellant's brother as follows:

"Q  Do you recall why you sped away?

"A  We didn't speed away. That car wouldn't run that fast. We were— made a sign to the right, and there was no road to the right, so we kept on going straight.

"Q  Straight to where?

"A  On the highway.

"Q  To where?

"A  Toward Yuma.

"Q  That's where you stopped the car for the first time after you left the port of entry?

"A  Yes, by the store."

As he discussed this testimony in his argument, the prosecutor stated:

"And I asked him, 'Was Yuma your first stop after you left the port of entry?' And he said, 'Yes, it was.'

"He is not only denying that he was behind the Valley National Bank on August 9, he is not only denying that he was directed to go to the secondary inspection station, but that he was taken into custody by Agent Goff, brought back to the customs office, where they were advised of their rights, where they were searched, and where their vehicle was searched—

"MR. KARAS: Excuse me. Your Honor, I do not believe that is the state of the record, that the defendant was denying all those matters. I believe it was concerning where his first stop was.

"THE COURT: What did counsel say?

"MR. KARAS: After his release from custody, he went to Yuma, he stated.

"THE COURT: The objection is overruled. Proceed."

Later, the prosecutor continued:

"He said that they just slowly drove away and went on the highway.

"I said, 'To where?'

"He said, 'To Yuma.'

"I said, 'Was Yuma your first stop after you left the port of entry?'

"He said, 'Yes.'

"That's the way I remember the evidence."

Although it is clear that the prosecutor was mistaken in his recollection of the testimony, his misstatement was not seriously prejudicial. Immediately after the objection had been overruled, the prosecutor commented, fairly and quite properly: "Ladies and gentlemen, if I at any time misstate the evidence or do not state it as you recall it, then use your own interpretation of it, for you are 12 collective heads as opposed to my one." While the objection was made by counsel for appellant's codefendant and not by his own attorney, we do not base our determination upon this procedural technicality. The argument was simply not prejudicially erroneous, especially when considered in the light of the court's instruction to the jury that "[s]tatements and arguments of counsel are not evidence * * *."

■■ In the opening portion of his summation, the prosecutor also remarked: "I don't think there is any point

in making any argument as to why there are crimes involving heroin, the destruction and the human waste which arises from the use of heroin." The appellant complains that the court's overruling of his objection to this argument was prejudicial error. We do not agree. Counsel are entitled to a reasonable degree of latitude in the presentation of argument, and the prosecutor's comment concerning "the destruction and the human waste which arises from the use of heroin" contained nothing more than that which is within the common knowledge of all reasonable people.

■ Returning now to the first point mentioned, the appellant insists that the information was fatally defective because it failed to specify the manner in which the alleged importation of the heroin was "contrary to law" within the meaning of those quoted words as used in the information. It is argued that 21 U.S.C. § 174 is the only statute specifically mentioned in the information itself and is, as it pertains to the importation of narcotics, a penalty statute only.[2] In effect, it is asserted that the information was fatally defective in not alleging that the narcotic had not been legally imported under the provisions of 21 U.S.C. § 513.[3]

■■ If there was a defect in the information, it was not such as could have misled or confused the appellant in any way. The information specified the type of drug involved, the date of the alleged illegal importation, and the country from which the importation was allegedly made. The specific statute involved, 21 U.S.C. § 174, was identified at the top of the face of the information. This statute begins as follows: "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States * * *, contrary to law * * *." Under these circumstances, the complaint of the appellant that the information was defective should not be heard for the first time on appeal. United States v. Williams, 202 F.2d 712 (5th Cir.), rehearing denied, 203 F.2d 572, cert. denied, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 347 (1953). Moreover, the appellant's argument should, in any event, be rejected upon the authority of Williamson v. United States, 310 F.2d 192 (9th Cir. 1962). See Robison v. United States, 329 F.2d 156 (9th Cir.), cert. denied, 379 U.S. 859, 85 S.Ct. 115, 13 L.Ed.2d 61 (1964); cf. Pon Wing Quong v. United States, 111 F.2d 751 (9th Cir. 1940). But see Current v. United States, 287 F.2d 268 (9th Cir. 1961) (dicta). Since heroin may rarely, if ever, be legally imported into the United States, we think that the sufficiency of the information should be tested in light of the presumption provided for in section 174,[4] which, we repeat, was the very section under which appellant was charged and which was identified on the face of the information. Our court has previously explained that under the provisions of this statute "proof of possession avoids the necessity of proving both illegal importation and

---

2. In addition to serving as a penalty statute for the illegal importation of narcotics, as defined in 21 U.S.C. § 173, section 174 also serves as a regulatory statute in regard to activities concerning a narcotic drug after it has been illegally imported, such as transportation or concealment of the drug. The penalty provided in the section is applicable to both the illegal importation and the other offenses.

3. 21 U.S.C. § 513 provides as follows: "Notwithstanding the provisions of this chapter or any other law, the Secretary or his delegate may in his discretion authorize the importation of any narcotic drug or drugs (including crude opium or coca leaves) for delivery to officials of the United Nations, of the Government of the United States, or of any of the several States, or to any person licensed or qualified to be licensed under section 506 of this title, for scientific purposes only."

4. After establishing a criminal penalty for the fraudulent or knowing importation of a narcotic drug contrary to law, section 174 provides as follows: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drugs, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C. § 174.

the defendant's knowledge thereof." Cellino v. United States, 276 F.2d 941, 943 (9th Cir. 1960). Thus, in Williamson v. United States, supra, Judge Browning, for our court, wrote: "An examination of the cases indicates that the summary allegation that the importation was 'contrary to law' is held sufficient where (as in the case of marihuana) importation of the particular sub-defense." 310 F.2d at 196. This principle, applicable in *Williamson* to a charge of illegal importation of marijuana, should, *a fortiori*, apply in testing the sufficiency of a charge of unlawful importation of heroin.

Affirmed.