**Allen Levair JORDAN and Alvina Lajan Johnson, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 22668.**

United States Court of Appeals Ninth Circuit.

Sept. 15, 1969.

Rehearing Denied Nov. 14, 1969.

Edward L. Cragen (argued), San Francisco, Cal., for appellants.

Larry S. Flax (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before BARNES and MERRILL, Circuit Judges, and TAYLOR\*, District Judge:

FRED M. TAYLOR, District Judge:

The appellant Jordan has appealed from a judgment convicting him on five

\* Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

counts of violating Title 21 U.S.C. § 174 [1], convicting him on two counts of violating Title 26 U.S.C. § 4705(a) [2], and convicting him on one count of violating Title 21 U.S.C. § 176a [3].

Appellant Johnson has appealed from a judgment convicting her on two counts of violating Title 21 U.S.C. § 174, and convicting her on one count of violating Title 26 U.S.C. § 4705(a). Each of the appellants was sentenced to serve a term of imprisonment of five years on each count, the sentences to run concurrently. The appellants were tried jointly and have filed a joint brief on this appeal which sets forth several specifications of error.

The indictment on which appellants were tried contained eleven counts. Counts I and IV charged appellant Jordan and one Thomas Small, who did not appear or testify at the trial, with knowingly and unlawfully receiving, concealing and facilitating the concealment and transportation of heroin in violation of 21 U.S.C. § 174. The violation charged in count I was alleged to have occurred on or about April 24, 1967, and the violation charged in count IV was alleged to have occurred on or about April 28, 1967.

Counts II and V charged appellant Jordan and said Small with having, knowingly and unlawfully sold heroin to agent William Jackson of the Federal Bureau of Narotics, on the same two occasions, knowing such heroin to have been imported into the United States, contrary to 21 U.S.C. § 174.

Jordan and said Small were charged in counts III and VI with knowingly and unlawfully selling heroin to agent Jackson on the same two occasions without obtaining from Jackson a written order on a form issued for that purpose by the Secretary of the Treasury, contrary to 26 U.S.C. § 4705(a).

Appellant Johnson and said Small were charged in count VII with knowingly and unlawfully receiving, concealing and facilitating the concealment and transportation of heroin, a narcotic drug, on June 15, 1967, well knowing it

---

1. Insofar as here relevant 21 U.S.C. § 174 provides:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

2. 26 U.S.C. § 4705(a):

"(a) General requirement.—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

3. 21 U.S.C. § 176a:

"Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned * * *.

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

had been imported, contrary to 21 U.S.C. § 174.

Count VIII charged Johnson and Small with having on the same date, June 15, 1967, knowingly and unlawfully sold and facilitated the sale of heroin to agent Jackson knowing it had been imported in violation of 21 U.S.C. § 174.

Count IX charged Johnson and said Small with knowingly and unlawfully selling heroin, a narcotic drug, on June 15, 1967, to agent Jackson without obtaining from him a written order on a form issued for that purpose, contrary to 26 U.S.C. § 4705(a).

Appellants Jordan and Johnson were jointly charged in count X with knowingly concealing, receiving and facilitating concealment and transportation of heroin and cocaine on July 27, 1967, knowing said drugs to have been imported, contrary to 21 U.S.C. § 174.

Count XI charged appellants with intent to defraud the United States, having on July 27, 1967, knowingly received, concealed and facilitated the transportation and concealment of marijuana (marihuana) which they well knew had been imported, contrary to 21 U.S.C. § 176a.

Appellant Jordan was convicted on all counts in which he was charged and appellant Johnson was convicted on counts VII, VIII and IX. The court granted a motion for a judgment of acquittal on counts X and XI as to appellant Johnson.

The record reveals that on two separate occasions, April 24 and April 28, 1967, appellant Jordan and the above mentioned Thomas Small sold heroin, a narcotic drug, to agent Jackson of the Federal Bureau of Narcotics, one of the officers who arrested appellants on July 27, 1967. It also appears that appellant Johnson and said Small sold heroin to agent Jackson on June 15, 1967.

The conviction of appellant Jordan on each of counts I, II and III was based on the transaction of April 24, 1967; his conviction on each of counts IV, V and VI was based on the transaction of April 28, 1967, and his conviction on each of counts X and XI was the result of the search of his residence and seizure of evidence as a result thereof on July 27, 1967.

The conviction of appellant Johnson on each of counts VII, VIII and IX rose out of the transaction on June 15, 1967.

The assignments of error raised by the appellants in regard to that part of Title 21 U.S.C. § 174 which provides that a defendant's possession of a narcotic drug shall be deemed sufficient evidence that the narcotic drug was illegally imported into the United States, and that the defendant knew of the illegal importation, unless the defendant explains his possession to the satisfaction of the jury, and the like provision pertaining to marijuana contained in Title 21 U.S.C. § 176a, will be considered together.

In light of the recent Supreme Court decision in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (May 19, 1969), the conviction of appellant Jordan on count XI which charged him with a violation of 21 U.S. C. § 176a cannot be upheld. Said count charged Jordan with knowingly receiving and concealing 1,018.95 grams of marijuana which he knew had been imported into the United States contrary to law. The Government relied on the presumption of knowledge aspect of § 176a to prove that the marijuana was illegally imported into the United States in order to obtain the conviction of Jordan on count XI. In *Leary* the court said at 1556:

"We conclude that the 'knowledge' aspect of the § 176a presumption cannot be upheld without making serious incisions into the teachings of *Tot*, [*Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519;] *Gainey*, [*United States v. Gainey*, 380 U. S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658;] and *Romano*, [*United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210.] In the context of this part of the statute, those teachings re-

quire that it be determined with substantial assurance that at least a majority of marijuana possessors have learned of the foreign origin of their marijuana through one or more of the ways discussed above."

The holding in the *Leary* decision may give some cause to challenge the constitutionality of the "knowledge" aspect of 21 U.S.C. § 174 presumption. However, the Supreme Court specifically stated that it was not considering that problem. In Footnote 92 of its opinion the court stated:

"In refusing to follow this aspect of the reasoning in *Yee Hem*, [Yee Hem v. United States, 268 U.S. 178, 45 S. Ct. 470, 69 L.Ed. 904,] we intimate no opinion whatever about the continued validity of the presumption relating to 'hard' narcotics, which was sustained in *Yee Hem* and is now found in 21 U.S.C. § 174. As will appear, our holding that the § 176a 'knowledge' presumption is unconstitutional rests entirely upon a detailed inquiry into the available facts about the state of mind of marijuana users. The facts regarding 'hard' narcotics may well be significantly different."

■ Until the Supreme Court holds otherwise we shall adhere to the prior decisions of this court which have held the presumption concerning knowledge of illegal importation of narcotic drugs contained in § 174 is constitutional. See Verdugo v. United States, 402 F.2d 599, 604 (9 Cir. 1968); Morgan v. United States, 391 F.2d 237 (9 Cir. 1968); Nutter v. United States, 412 F.2d 178 (9 Cir., decided May 29, 1969).

Appellants further contend that their conviction for violating 26 U.S.C. §

4705(a) should be set aside on the theory that this section violates their right against self-incrimination protected by the Fifth Amendment to the Constitution. In support of this contention the appellants rely on the cases of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1969). Title 26 U.S.C. § 4705(a) makes it unlawful to sell narcotic drugs unless the purchaser furnishes "a written order * * * on a form * * * issued in blank for that purpose by the Secretary or his delegate."

The United States Court of Appeals for the 2nd Circuit considered the constitutionality of 26 U.S.C. § 4705(a) in light of *Marchetti, Grosso* and *Haynes*, in the case of United States v. Minor, 398 F.2d 511 (1968). The issue before the court in that case was:

"[W]hether the Fifth Amendment privilege against self-incrimination affords a defense to a prosecution for selling narcotic drugs without the mandatory written order form required by 26 U.S.C. § 4705(a)." Id. at 512.

■ In resolving said question the court concluded that compliance with § 4705(a) did not subject Minor to the risk of self-incrimination. In so deciding the court found the issue they considered was significantly different from those before the Supreme Court in *Marchetti, Grosso* and *Haynes*. Id. at 514. The issues raised in the Minor case in regard to the constitutionality of Section 4705(a) were identical to those raised by appellants in this cause.[4]

---

4. In *Minor* at pp. 513, 514 and 515 the court stated:

"Considered in *vacuo*, compliance with § 4705(a) does not present any threat of self-incrimination. * * * The statutory language makes manifest—and Minor concedes—that the purchaser of narcotics and not the seller is under compulsion to apply for and obtain the requisite order form. * * *

"Minor maintains, (as do appellants) however, that § 4705(a) must be examined in the context of the entire statutory and regulatory scheme and that when so viewed the potential for incrimination becomes apparent.

* * * * * *

"Nevertheless, we are of the view that the issue we are called upon to resolve is significantly different from those be-

■ Appellants also urge that they were denied due process of law because of the lapse of time between the sales of heroin and their arrest. As heretofore stated, the appellant Jordan sold heroin to agent Jackson on two separate occasions, the first being April 24, 1967, and the second on April 28, 1967, and the Indictment was returned and filed on August 16, 1967. Appellants argue that because of this time element they were prejudiced in the preparation and defense of their case. They claim that they could not recall the details of the days on which they were charged with selling narcotic drugs to agent Jackson. We find no merit in these contentions. There was only a delay of three months between the first sale by Jordan and the arrest of appellants. It is disclosed that agent Jackson positively identified the appellants as the individuals from whom he had purchased the narcotics. (R.T. pages 291–293; 298–307). The case of Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965) upon which appellants rely is not controlling in this case. In Ross there was a purposeful delay of seven months between the commission of the offense and the arrest. At the trial, the identification of Ross, as the seller of narcotics, was by a policeman who had to refresh his memory from a notebook. In the case of Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966) Judge Burger of the United States Court of Appeals for the District of Columbia in a dissenting opinion discussed the standards which Ross requires and stated at page 220:

"The application of Ross to a particular case turns on three operative elements: (1) the *length* of the purposeful delay; (2) the *basis* of the identification of the defendant; and (3) the claimed *effect* of the delay in rebutting the identification, i. e., the resulting prejudice. It is the existence of a purposeful delay and a Ross-type identification that permits a lesser degree of prejudice to reverse; without those factors the narcotics defendant would be required to show substantial and specific prejudice. Thus, the shorter the period of delay or the better the method of identification, the greater the prejudice which must be shown.

"Ross recognized that there was a crucial need as well as a valid purpose for undercover narcotics investigations and that some purposeful delays between the offense and the arrest were inevitable." (Footnotes omitted.)

The only prejudice claimed by appellants is that they could not recall details of the days in the distant past but steadfastly maintained their innocence. The time element between the first sale of heroin by Jordan and the arrest of the appellants was not so unreasonable as to warrant a reversal of the conviction. There were no "special circumstances" in this case as there were in the cases of Ross and Woody, supra.

for the Supreme Court in *Marchetti, Grosso* and *Haynes* and we conclude that Minor's conviction must be affirmed because compliance with § 4705 (a) would not have subjected him to the risk of self-incrimination. If § 4705 (a) serves a distinct Congressional purpose and can be meaningfully enforced apart from the sections which allegedly pose the incrimination dilemma, it is incumbent upon us to consider it as an isolated enactment in order to avoid the adjudication of a serious constitutional issue. See, e. g., Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion of Mr.

Justice Brandeis), cited in Haynes v. United States, supra, 390 U.S. at 92, 88 S.Ct. at 722. * * * And, we believe that § 4705(a) serves an important function within the statutory scheme even if, which we do not decide, the seller cannot be forced to fill out the form and to keep it available for government inspection. Requiring that sales be made only to persons who have acquired and are able to produce Treasury forms ensures that narcotic drugs will not be transferred to unauthorized purchasers or to those who are likely to evade the payment of taxes imposed under 26 U.S.C. §§ 4701 and 4721." (Footnotes omitted.)

The appellants have not shown that the defense of either was prejudiced by the delay. Their defense was a denial that they had ever sold narcotics to anyone. Their testimony is that they could not remember "the details of the days in the distant past." In the circumstances in this case and according to the recent decisions of this court, we hold that the delay in the arrest of either of the appellants did not result in the denial of due process. Wilson v. United States, 409 F.2d 184 (9 Cir. 1969); Whitted v. United States, 411 F.2d 107 (9 Cir., decided May 5, 1969).

■ Appellants claim that a certain quantity of narcotic drugs must exist in order to support their conviction. They do not cite any federal authority in support of such claim and we have found none. The Federal law only requires that some measurable amount of narcotic drug be contained in the substance which is the subject of the Indictment. United States v. Wanton, 380 F.2d 792 (2 Cir. 1967).

■ Appellants argue that the trial court erred in not granting each a separate trial. Their reliance on the two recent Supreme Court decisions of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) is misplaced. Both of these cases involve the admission of a co-defendant's confession implicating the other defendant at a joint trial when the co-defendant did not take the stand and thus denied the defendant his right of cross-examination secured by the confrontation clause of the Sixth Amendment. In this case neither of the appellants was denied his or her right of confrontation because both appellants took the witness stand and neither made a statement implicating the other. In this case the conduct of appellants upon which each of the counts was based was part of a series of factually related transactions in which both of the appellants participated, and the counts were properly joined, even though each count alleged a separate offense and both of appellants were not charged in each count. Williamson v. United States, 310 F.2d 192 (9 Cir. 1962); Wiley v. United States, 277 F.2d 820 (4 Cir. 1960) certiorari denied 364 U.S. 817, 81 S.Ct. 47, 5 L.Ed.2d 47; Rule 8, F.R.Cr.P.

■ Appellants also contend that the trial court erred in refusing to grant a mistrial after agent Krueger testified that appellant Jordan refused to give him permission to search his residence. If the admission of said testimony did create any prejudice in the minds of the jurors, it was removed when the court admonished the jury that: "No inference of guilt may be drawn from anyone exercising their rights under the Constitution." (R.T. 406). We find that the error, if any, was harmless. In Clark v. United States, 412 F.2d 491 (9 Cir., decided May 19, 1969), it was stated:

"The critical question here is whether the error in the setting of this case can be deemed to be harmless. The Court in Chapman v. California, 386 U.S. 18 at page 22, 87 S. Ct. 824, at p. 827, 17 L.Ed.2d 705 in holding that even constitutional errors can be harmless, stated: 'We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.'"

■ We shall now consider appellants' contention that appellant Jordan was arrested under and pursuant to a warrant of arrest issued for his "look alike" brother, James C. Jordan and as a result his arrest was invalid. It is argued that the arrest being invalid the search made incident thereto was unreasonable and illegal and the evidence seized as a result thereof should have been suppressed. The Government concedes that the arrest of appellant Jordan in his house was not made under the authority of a valid warrant but was made on the basis that the agents had proba-

ble cause to believe appellant Jordan had committed a crime. It clearly appears that because of the sales of heroin to agent Jackson, the officers did have ample cause to believe and know that appellant Jordan had committed a crime and they could therefore arrest him without a warrant.

Although the officers had a warrant for the arrest of James Jordan and did arrest him they soon found out after talking to him that appellant Allen Jordan was the one they wanted to arrest. James Jordan told the agents where his brother resided and accompanied them to his brother's home. Soon after arriving at the Allen Jordan home the agents arrested appellant Johnson outside the residence pursuant to a valid warrant of arrest. The evidence discloses and the trial court found that the officers entered the residence at the request of and with the permission of Johnson. When appellant Jordan arrived he was placed under arrest inside the house when both agents Jackson and Krueger were present. Jordan was identified by agent Jackson as being the individual from whom he had purchased narcotics and agent Krueger participated in the surveillance of the transactions.

The facts and circumstances known to the arresting officers were sufficient to constitute probable cause for the arrest of appellant Jordan. Agents of the Federal Bureau of Narcotics may arrest persons without a warrant when they have reasonable grounds to believe that the person arrested has committed or is committing a violation of the Federal Narcotics Law. 26 U.S.C. § 7607, Rocha v. United States, 387 F.2d 1019 (9 Cir. 1967); Cf. Bell v. United States, 371 F.2d 35 (9 Cir. 1967), cert denied, 386 U.S. 1040, 87 S.Ct. 1498, 18 L.Ed.2d 608.

The principal reason that appellants question the legality of the arrest of appellant Jordan is to challenge the legality of the search of appellants' residence incident to such arrest. The evidence which supports Jordan's conviction on counts X and XI was seized as a result of the search of his residence made incident to his arrest and without a search warrant. The evidence was discovered by agent Krueger in a closet which was visible from where Jordan was seated but not in the immediate area or within his reach. In considering this question of the search and the seizure of the evidence used at the trial against Jordan on counts X and XI, we must not only look to the cases cited by appellants and the Government but also to the recent decision of the Supreme Court of the United States in Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (decided June 23, 1969). In Chimel the court stated:

"Rabinowitz [United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653] and Harris [Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399] have been the subject of critical commentary for many years, and have been relied upon less and less in our own decisions. It is time, for the reasons we have stated, to hold that on their own facts, and insofar as the principles they stand for are inconsistent with those that we have endorsed today, they are no longer to be followed.

"Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, 'unreasonable' under the Fourth and Fourteenth Amendments and the petitioner's conviction cannot stand."

If the rule announced in Chimel is to be applied retroactively, then the search of appellants' residence would have been unreasonable and illegal. However, in an order of the Supreme Court made

and entered on June 23, 1969, in the case of Von Cleff v. New Jersey, 395 U. S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728, the court indicated some doubt as to whether *Chimel* would be given retroactive application. It stated as follows:

> "This challenge would unquestionably be well founded if today's decision in Chimel v. California, ante, [395 U. S.] p. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685], were given retroactive application." See also Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed. 2d 732.

Our resolution of this case does not require us to decide whether *Chimel* is to be applied retroactively and we do not do so.

 Assuming, arguendo, that the search was illegal, the conviction of the appellant Jordan as a result thereof on count X need not be considered because of the concurrent sentence on six other counts. While such sentences in no way deprive this court of jurisdiction to consider the validity of the verdict on count X, Benton v. Maryland, 395 U.S. 784, 787–791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) holds it is "unnecessary," under certain circumstances, and is a matter of our discretion, by reason of the continuing rule of judicial convenience. *Cf.* Hirabayashi v. United States, 320 U.S. 81, 105, 63 S.Ct. 1375, 87 L. Ed. 1774 (1943).

In our judgment, under the facts of this case, the establishment of appellant Jordan's guilt on six other counts of the indictment makes it unnecessary for us to decide whether the assessment of guilt on the seventh count (count X) is valid.

After fully considering the record we conclude that there is substantial competent evidence to sustain the judgment convicting appellant Jordan on all counts except counts X and XI and to sustain the judgment convicting appellant Johnson.

We affirm the judgment of conviction as to appellant Jordan on all counts, except count XI which we reverse; and count X which we find unnecessary to consider; and we affirm the judgment of conviction as to appellant Johnson.