THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JULIAN FELDER, Appellant.

Second Department, July 13, 1972.

*James J. McDonough* (*Matthew Muraskin* and *Victor Ort* of counsel), for appellant.

*William Cahn, District Attorney* (*John P. Della Ratta* of counsel), for respondent.

SHAPIRO, J. The defendant has been found guilty of the crimes of robbery in the first degree and grand larceny in the third degree.[1] Subdivision 4 of section 160.15 of the Penal Law provides that a person is guilty of *robbery in the first degree* when he forcibly steals property and, in the course of the commission of the crime, or immediate flight therefrom, "displays what appears to be a pistol, revolver or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime." If, however, the defendant merely "displays what

---

1. We are concerned only with the propriety of the robbery conviction.

appears to be a pistol, revolver or other firearm '', the crime is *robbery in the second degree* (Penal Law, § 160.10, subd. 2, par. [b]).

Subdivision 2 of section 25.00 of the Penal Law provides: '' When a defense declared by statute to be an ' affirmative defense ' is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence.''

The 1967 Penal Law established a number of affirmative defenses such as entrapment (§ 35.40), duress (§ 35.35, subd. 1) and renunciation (§ 35.45, subd. 1). While the Court of Appeals has upheld the validity of casting the burden of proof as to the defense of entrapment upon the defendant (*People* v. *Laietta,* 30 N Y 2d 68; *People* v. *Calvano,* 30 N Y 2d 199), the case before us presents a novel problem. In most instances, affirmative defenses are in the nature of confession and avoidance, which entirely relieve the defendant of a criminal culpability (cf. *People* v. *Laietta, supra,* p. 75; 19 Syracuse L. Rev. 44, 64). Here, however, by taking the stand to establish the affirmative defense (i.e., the nonoperability of the firearm allegedly used in the robbery) the defendant would necessarily have have had to incriminate himself in the commission of the crime of robbery in the second degree.[2] He contends that subdivision 4 of section 160.15 of the Penal Law is unconstitutional because it creates a presumption of guilt and thus would compel him to be a witness against himself.

At first blush the defendant's contention seems to have merit, since in a case, such as this, in which the gun was not produced at the trial, the only practical way in which he could have established his affirmative defense was to testify and convict himself of robbery in the second degree.[3]

However, the argument does not withstand close analysis, since the Legislature, had it desired to do so, could, in the first instance, have made the display of what *appeared* to be a firearm during the course of a forcible stealing of property robbery

2. A similar situation pertains to the affirmative defense to the crime of burglary in the first degree (that the firearm was not a loaded weapon capable of discharging a shot which could cause death or serious physical injury [Penal Law, § 140.30, subd. 4]) and to the affirmative defense in a felony murder prosecution (that the defendant had no reasonable ground to believe that another participant intended to engage in conduct likely to result in death or serious physical injury [Penal Law, § 125.25, subd. 3, par. [d]). In the former instance the defendant's testimony could establish his guilt of the crime of burglary in the second degree (Penal Law, § 140.25, subd. 1, par. [d]) and in the latter instance it could supply proof of his guilt of the underlying felony.

3. The defendant took the stand at the trial. However, he denied complicity in the robbery and possession of a gun.

in the first degree. The condition of the firearm is information uniquely within the knowledge of the defendant and "will rarely, if ever, be established by the prosecution when the actor does not fire the weapon or the weapon is not immediately recovered" (Denzer and McQuillan, Supplementary Practice Commentary on section 160.15 of the Penal Law [McKinney's Cons. Laws of N. Y., Book 39, Pocket Part]). Understandably, therefore, the State has cast the burden of establishing the nonoperability of the weapon upon the defendant.

In so doing, the Legislature has, in effect, created a presumption that the firearm displayed during the course of a forcible theft of property was loaded, operable and capable of causing serious physical injury. This was recognized by the Governor in his memorandum approving the addition of subdivision 4 to section 160.15 when he said (N. Y. Legis. Annual, 1969, p. 567): "The bill amends the Penal Law to increase the penalties for robbery and burglary where firearms are displayed by the defendant * * *. Specifically, the bill provides that a firearm displayed during the commission of a burglary or a robbery *is presumed to be loaded* and would constitute the crime of Burglary in the First Degree, or Robbery in the First Degree, both of which are class B felonies punishable by up to 25 years imprisonment. Defendants charged with such acts would be permitted to prove, as an affirmative defense, that the firearm exhibited was either unloaded or incapable of being fired. If such defense were successful, the crime charged would be reduced to Burglary in the Second Degree or Robbery in the Second Degree, class C felonies punishable by up to 15 years in prison" (emphasis added).

Placing the burden of proof on a defendant as to a fact peculiarly within his knowledge does not deny him the benefit of the presumption of innocence. As Mr. Justice CARDOZO noted in *Morrison* v. *California* (291 U. S. 82, 88–89): "The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." (See, also, *Leland* v. *Oregon*, 343 U. S. 790.)

The defendant's reliance upon *Stump* v. *Bennett* (398 F. 2d 111, cert. den. *sub nom. Bennett* v. *Stump,* 393 U. S. 1001) is misplaced. The court there invalidated, as violative of due process, an Iowa statute which, *inter alia,* placed upon the defendant the burden of establishing the defense of alibi by a preponderance of the evidence. That statute, unlike the one here under consideration, created an arbitrary presumption of the defendant's guilt of the substantive charge. The court noted (p. 116): "By shifting the burden of proof to a person who claims to have been elsewhere at the time of the crime, there is created an irrational and arbitrary presumption of guilt. It arises not by reason of a proof of fact from which a fair inference might be drawn but from the mere happening that the defendant offers testimony in an attempt to establish innocence. When this occurs, unless the defendant can succeed in overbalancing the state's evidence, the jury is expressly told he cannot be acquitted by reason of his sole claim to innocence."

Here, unlike the situation in *Stump,* the presumption arises from "proof of fact from which a fair inference might be drawn" that the firearm displayed by the defendant was operable and not from "an irrational and arbitrary presumption of guilt." In this case the complainant testified that the defendant had pointed a gun at him and had threatened to kill him unless he did as he was told.

Section 1898-a of the former Penal Law (now Penal Law, § 265.15, subd. 3) provided that the presence of certain weapons in an automobile was presumptive evidence of illegal possession of the weapons by all of the occupants of the automobile. In discussing the constitutionality of that statute the court in *People* v. *Russo* (278 App. Div. 98, 101–102) said: "Appellant's assertion that section 1898-a of the Penal Law is unconstitutional is apparently based upon the claim that it is in conflict with the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the Constitution of the State of New York, which provide in part that no person shall be compelled in any criminal case to be a witness against himself, nor deprived of life, liberty or property without due process of law.

"It is well settled that statutes such as section 1898-a of the Penal Law, providing that certain facts are presumptive evidence of one or more of the ultimate facts in issue, are not unconstitutional where, as here, there is a rational connection with the facts proved and the conclusion presumed, and where the presumptions themselves are neither conclusive nor arbitrary. (*Morrison* v. *California,* 291 U. S. 82, 90 [1934]; *Manley*

v. *Georgia,* 297 U. S. 1, 5–6 [1929]; *Mobile, J. & K.C.R.R. Co.*
v. *Turnipseed,* 219 U. S. 35, 42–43 [1910]; *People* v. *Adams,*
176 N. Y. 351 [1903], affd. *sub nom. Adams* v. *New York,* 192
U. S. 585, 598 [1904]; *People ex rel. Woronoff* v. *Mallon,* 222
N. Y. 456, 464.)''

The question of whether *permitting* the exercise by a defend-
ant of his right to establish as an affirmative defense that the
gun displayed by him in the commission of a robbery was not
loaded or capable of causing death or serious physical injury
would violate his constitutional privilege against self incrimina-
tion has never heretofore been determined in this State.

As noted, the Legislature could have made the use of what
appeared to be a firearm during the course of the forcible steal-
ing of property the crime of robbery in the first degree. Instead,
as pointed out by Denzer and McQuillan (Supplementary Prac-
tice Commentary on section 160.15 of the Penal Law [McKin-
ney's Cons. Laws of N. Y., Book 39, Pocket Part], *supra*), it
offered ''the defendant an opportunity to fight his way out
of a first degree conviction if he can prove that the gun was
unloaded or incapable of being fired,'' although, as they noted,
'' even if the defendant successfully does so, he may still be
convicted of the second degree crime (§ 160.10 [2-b], § 140.25
[1-d]) which requires only display of what appears to be a
gun, but does not require that it be loaded or operable.'' The
affirmative defense which the defendant may interpose does
not compel him personally to take the stand. He could produce
evidence by others that the gun used in the robbery was not
operable or was unloaded. While doing so might well pose
serious problems with respect to the presentation of his case
to the jury if, in addition, he chooses to insist upon his complete
innocence, the '' propriety of raising inconsistent defenses is
a principle now firmly imbedded in the criminal and civil law.
The introduction of the concept of statutory ' affirmative
defenses ' in the new Penal Law is not sufficient reason to change
such a fundamental rule. * * * (*Henderson* v. *United
States,* 237 F. 2d 169, 172) '' (*People* v. *Chambers,* 56 Misc 2d
683, 685).

Furthermore, while the statute offers the defendant a diffi-
cult choice, that consideration is not a compelling reason for
declaring it unconstitutional, since the choice need only be made
after the presentation of the People's case. He can then decide
whether to rely upon a claim of innocence, or upon the statutory
affirmative defense, or whether to take the risk of asserting
contradictory defenses. He is not, as was the case in *Marchetti*

v. *United States* (390 U. S. 39), confronted with alternative choices, either of which would entail admission of a violation of law.

As the Supreme Court noted in *Yee Hem* v. *United States* (268 U. S. 178, 185), in dealing with a statute creating a presumption that opium would be presumed to have been imported in violation of law: "The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article *prima facie* evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a *prima facie* case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution." (See, also, *United States* v. *Secondino,* 347 F. 2d 725.)

In short, although subdivision 4 of section 160.15 of the Penal Law offers the defendant a difficult choice, the statute does not contravene the Fifth Amendment of the Constitution of the United States or section 6 of article I of the Constitution of the State of New York, as the vice of compulsion is lacking. The People must still establish every element of the substantive crime. The defendant is offered the opportunity to assert an affirmative defense, but is not forced to do so, and therefore is not compelled to be a witness against himself. There is therefore no constitutional infirmity in the affirmative defense provisions of sections 25.00 and 160.15 (subd. 4) of the Penal Law.

The defendant, in his brief, raises two other points which deserve comment. The trial court denied a defense request that one of the People's witnesses, a detective, be barred from the courtroom until called to testify and allowed him to remain in the courtroom to assist the prosecution throughout the trial. It is well settled that the granting of an order of exclusion of witnesses is discretionary (*People* v. *Gifford,* 2 A D 2d 634). Hence, the denial of the request is not reversible error unless it can

be shown that the trial court abused its discretion (*Williamson v. United States*, 310 F. 2d 192, 198; *People* v. *Gifford, supra*). Here, although there has been no showing of any prejudice resulting from the presence of the witness in the courtroom, the refusal of the trial court to exclude him from the courtroom until he was called to testify is nevertheless regrettable, for the practice of such exclusion " is a time-honored one and should not be abandoned " (*Charles* v. *United States*, 215 F. 2d 825, 827). As the court noted in *Williamson* (*supra,* p. 198), " the practice of excluding witnesses from the courtroom except while each is testifying is to be strongly recommended, particularly where the testimony of the witnesses is in any measure cumulative or corroborative."

The defendant also attacks, as reversible error, the action of the trial court, during a recess, in speaking on the telephone to a prospective defense witness about his possible testimony, without the knowledge or consent of defense counsel. While not reversible in the context of this case, such conduct was injudicious.

The judgment should be affirmed.

RABIN, P. J., LATHAM, CHRIST and BENJAMIN, JJ., concur.

Judgment of the County Court, Nassau County, rendered March 12, 1971 on resentence, affirmed.