THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JULIAN FELDER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAYSO
TUCKER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
HAROLD E. WRIGHT, Appellant.

Second Department, February 14, 1978

## APPEARANCES OF COUNSEL

*James J. McDonough (Howard B. Comet* and *Matthew Muraskin* of counsel), for Julian Felder, appellant.

*Roth & Balanoff (Melvyn K. Roth* of counsel), for Mayso Tucker, appellant.

*Robert Rivers, P. C.,* for Harold E. Wright, appellant.

*Denis Dillon, District Attorney (Steven R. Bernhard* and *William C. Donnino* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

The defendant in each of these three appeals was represented in the County Court by one Albert Silver. Neither at the time of such representation nor at any other time was Silver duly authorized to practice law either in this State or in any other jurisdiction. Each defendant, unaware of that fact when represented by Silver, appeals from a denial of his motion under CPL 440.10 to vacate the judgment of conviction. Defendant Felder was convicted after a jury trial of robbery in the first degree and grand larceny in the third degree, while defendant Tucker's conviction for criminal sale of a dangerous drug in the third degree and defendant Wright's for rape in the third degree, were rendered after pleas of guilty.

On appeal each defendant argues that his representation in the County Court by a person not admitted to practice law constituted a violation of his Sixth Amendment's rights, thus voiding all proceedings in that court per se, and requiring that the ensuing conviction be set aside. I disagree with that conclusion.

■ ■ Concededly, the fact that each of the defendants was represented in the County Court by a layman masquerading as a lawyer raises an issue of constitutional dimension. However, not all errors which violate the Constitution of the United States call for reversal (cf. *Harrington v California,* 395 US 250, 253-254). Constitutional errors insignificant in the setting of a particular case may, consistent with the Federal Constitution, be deemed harmless, not requiring an automatic reversal of the conviction (cf. *Chapman v California,* 386 US 18, 22). Even constitutional error may be harmless where it is clear, beyond a reasonable doubt, that the error did not

contribute to defendant's conviction *(People v Almestica,* 42 NY2d 222, 224).

■ ■ We therefore concur with the view expressed by each of the County Court Judges whose decisions are before us that representation of an accused by an unlicensed counsel does not per se mandate vacating of the judgment of conviction (see *People ex rel. Harrington v Martin,* 263 App Div 922, mot for lv to app den 263 App Div 1025, mot for lv to app den 288 NY 740, cert den 316 US 678; *People v Cox,* 12 Ill 2d 265). The test of due process in such an instance is not whether the defendant had an attorney, licensed or unlicensed, but whether under all of the circumstances his conviction was obtained in such a manner as to be offensive to the common and fundamental idea of what is fair and right (see *People v Cornwall,* 3 Ill App 3d 943).

An in-depth review of the entire record in each of the three cases on appeal reveals the following:

### PEOPLE V FELDER

With respect to routine defense work, Silver requested a bill of particulars, used 18 peremptory challenges to potential jurors, requested that witnesses be excluded from the court, and conducted a *voir dire* in connection with each of the People's exhibits. He conducted a lengthy *Wade* hearing, and utilized that hearing to elicit testimony from a detective and the complaining witness in order to "lock in" their testimony for impeachment purposes at the trial.

In his opening statement at the trial Silver tried to impress upon the jurors the inherent unreliability of eyewitness identification testimony. Consistent with such strategy, he questioned the complainant in order to demonstrate to the jury that the latter had not obtained a good look at the perpetrator of the robbery and that the lighting conditions had been bad. Silver elicited an admission from the complainant that he had a prior criminal record. In order to impeach the complainant's testimony that the perpetrator had "gritted his teeth" during the robbery, Silver not only produced two witnesses to corroborate Felder's testimony that he did not have any upper front teeth at the time, but produced records of his attempts to obtain false teeth from a health center and a family service center.

In his summation, Silver laid great stress on the testimony

concerning the perpetrator's front teeth and Felder's lack of same, and reminded the jury that no weapon had been produced at the trial. During its deliberations the jury requested that the complainant's testimony as to the perpetrator's description be reread. Furthermore, that body was òut for some eight hours before returning a verdict.

From the above recital, I come to the inevitable conclusion that Silver's representation of Felder was most effective, exceedingly thorough and highly professional.

### PEOPLE V TUCKER

Three indictments were returned against defendant Mayso Tucker: two of those indictments charged him with two counts each of criminally selling a dangerous drug in the third degree, a class C felony, and criminal possession of a dangerous drug in the fourth degree, a class D felony (a total of eight counts, four in each indictment); the third indictment charged, *inter alia,* criminal possession of a forged instrument in the second degree and forgery in the second degree, class D felonies. The maximum exposure Tucker faced for a class C felony conviction would have been 15 years, and for a class D, a maximum of seven years. Since there were three separate indictments, he could have received consecutive sentences. However, Tucker was permitted to plead to one count of criminally selling a dangerous drug in the third degree in satisfaction of both drug indictments, and to a reduced charge of criminal possession of a forged instrument in the third degree, a class A misdemeanor, in satisfaction of the forgery indictment. Although promised a sentence of no more than five years at the time the pleas were taken, Tucker in fact was given a maximum of three years on the drug conviction, and a definite one-year sentence on the forgery charge, both sentences to run concurrently. In view of the foregoing, I believe that Silver's efforts in obtaining a most advantageous plea on behalf of his client constitute substantially more than mere adequate representation. It is highly doubtful that a duly licensed attorney experienced in criminal matters could have obtained a better result.

### PEOPLE V WRIGHT

In the Wright case, defendant was charged under a nine-count indictment with rape in the first degree, rape in the

third degree, sodomy in the first degree (two counts), sodomy in· the third degree (two counts), sexual abuse in the first degree and endangering the welfare of a child (two counts). That indictment stemmed from his sexual assaults or advances upon' two females under 17 years of age. In a second indictment containing six counts, Wright was charged with two counts of first degree sodomy, two counts of sexual abuse in the first degree, and two counts of unlawful imprisonment. That indictment likewise stemmed from his sexual assaults or advances on the same two females.

In view of the fact that defendant had a predicate felony conviction, a conviction under either indictment for first degree rape or first degree sodomy, each a class B felony, would have mandated that he receive at least an indeterminate prison term of 4½ to 9 years, and would have exposed him to a maximum term of 12½ to 25 years.

After a hearing on the admissibility of a written statement made by him, which the County Court found he made voluntarily, Wright pleaded guilty to rape in the third degree in satisfaction of both indictments. As a second felony offender he received the minimum sentence possible, namely, an indeterminate term of imprisonment of one and a half to three years. In my opinion this record strongly suggests that Silver did more than a creditable job for Wright. In view of the factors present (maximum exposure and written confession), the plea negotiated by Silver was undoubtedly in the best interest of his client.

▪ Thus, the record conclusively demonstrates that Silver represented each defendant ably, diligently, competently and conscientiously; there is no reasonable possibility that his infirmity (lack of admission to the Bar) was the *raison d'etre* for, or in any way contributed to, their convictions. Thus, such error or infirmity was harmless beyond a reasonable doubt, and the convictions should not be nullified as a matter of law (cf. *People v Almestica,* 42 NY2d 222, *supra).*

We have examined other issues raised by each of the defendants and have found them to be without merit. Accordingly, the orders appealed from should˙be affirmed.

HAWKINS, J. (dissenting). I dissent and vote to reverse the orders and grant the motions to vacate the judgments of conviction.

Fortunately, the unadorned common issue presented by

these three appeals is most rare: should convictions, one after a jury trial and two by guilty pleas, be set aside upon it being established that each of the three defendants was represented by a rank impostor—a layman—one Albert Silver, who presumed to act as a duly admitted attorney, who purported to be a lawyer but, in fact, never completed law school, never passed a Bar examination and had never been admitted to practice in this or any other jurisdiction? Appropriately, each of these appeals invokes the revived writ of error *coram nobis.* The modality sought is singularly suitable for, indeed, the court is given the opportunity to correct an error, albeit not of its making.

The essential facts are simple. The defendant Julian Felder was convicted after a jury trial of robbery in the first degree and grand larceny in the third degree. Defendants Mayso Tucker and Harold E. Wright were convicted, upon their pleas of guilty, of criminal sale of a dangerous drug in the third degree and rape in the third degree, respectively. It appears that in the Felder prosecution Mr. Silver was privately retained and paid a retainer. Thereafter, presumably with no refresher forthcoming, Mr. Silver had himself assigned as counsel pursuant to article 18-B of the County Law. Respecting the other two defendants, his representation was as assigned counsel from the inception.

There is, indeed, a constitutional question posed. Preliminarily, I do not believe it can or should be disposed of by resorting to the rubric that by dint of *People v Crimmins* (36 NY2d 230) there was no impairment of substantial constitutional rights. To do so, in my opinion, is to beg the question. *Gideon v Wainwright* (372 US 335), and its issue, mandate beyond peradventure the constitutional right of a defendant charged with a crime to be represented by counsel. If we merely summon the shades of *Crimmins,* we are avoiding the quintessential problem.

There are substantial constitutional due process questions presented: a short history of the litigation involving one of the defendants suffices. This court, some five years ago, had on appeal, in *People v Felder* (39 AD2d 373), the conviction of one of the very defendants. (Mr. Silver did not represent the defendant upon that appeal.) Among the issues presented was a rather involved legal dilemma confronting this defendant upon his trial. As a result of the presumption contained in subdivision 4 of section 160.15 of the Penal Law, the quandary

posed was how the defendant could overcome the statutory presumption that the gun involved was loaded without his taking the stand and thereby inextricably and inescapably admitting having participated in the events. (Parenthetically, this court was then completely unaware that Mr. Silver, the trial attorney, was not a lawyer.)

My brethren in the majority cite *People ex rel. Harrington v Martin* (263 App Div 922, mot for lv to app den 263 App Div 1025, mot for lv to app den 288 NY 740, cert den 316 US 678), *People v Cox* (12 Ill 2d 265) and *People v Cornwall* (3 Ill App 3d 943). The only opinion addressing itself to the issue presented herein is that of the Third Department in *Harrington.* The two dispositive sentences therein state: "On the trial the relator was represented by a man named Milligan. It is said that Milligan was not then a member of the bar of the State; however, the relator pleaded guilty to the crime charged and by agreement, between himself and the district attorney, other indictments against him were dismissed."

Apart from *Harrington* being a pre-*Gideon* case and hence of dubious present applicability, the very language casts doubt upon its efficacy. Just what the phrase "not then a member of the bar" imports is unclear. It could readily be speculated that he may have been disbarred or was subsequently admitted. Moreover, the latter sentence reveals that the defendant made his own arrangements with the District Attorney.

The only recent adjudication squarely in point is that in *People v Washington* (87 Misc 2d 103). Supreme Court Justice AARON F. GOLDSTEIN, presiding at Criminal Term, vacated the judgment of conviction involving another defendant, also represented by Albert Silver. After noting that apparently he was "a competent legal technician" who had indulged in all the customary pretrial proceedings, motions, etc., the court held, nevertheless (p 105): "Notwithstanding all of the foregoing, this court is constrained to hold that a defendant's right to counsel in a criminal case under both the Federal and State Constitutions means a duly licensed lawyer and nothing less. There just cannot be any substitute for this constitutional mandate. The defendant never had any reason to believe that his 'lawyer' was unlicensed. On the contrary, he was justified in believing that he was being represented by a competent and *recognized* lawyer. A defendant's constitutional right to counsel can only be satisfied by a lawyer admitted to practice before the court."

Regrettably, there was no appeal in *Washington*. The defendant, presumably disenchanted with his prior "legal representation", appeared *pro se.*

*People v Cornwall* (3 Ill App 3d 943, *supra)* is readily distinguishable. The attorney there involved, although not admitted to practice in Illinois, had for many years been duly admitted to the Bar of a contiguous State, Iowa. Additionally, there were claims that counsel had not prosecuted an appeal or petitioned for executive pardon.

That holding largely rested on the authority of *People v Cox* (12 Ill 2d 265, *supra)*. In *Cox,* however, the Supreme Court of Illinois reversed the conviction and granted a new trial. That defendant, a 14 year old convicted of murder, was represented by an attorney of record who was not admitted to practice in Illinois, and his assistant was newly admitted and was participating "for the experience". Despite its reservations, noting the possibility of imposition upon the court by a defendant deliberately selecting a nonlawyer, nevertheless, the "attorney" for the defendant having falsely represented his status, the conviction was reversed. The court held that the defendant was entitled to be represented by a duly licensed attorney. Reversal was required since there was a violation of fundamental concepts of fairness. The exact language of the Supreme Court of Illinois is (p 269): "We must agree with the defendant that the term 'counsel', as it is employed in the constitutional provisions relied upon, means a duly licensed and qualified lawyer, and not an attorney in fact or a layman."

The majority cite *Chapman v California* (386 US 18) as excusing insignificant errors. However, in *Chapman,* the Supreme Court of the United States reversed the conviction. Although under California law the State prosecutor was permitted to comment upon the defendant's failure to testify, where both the prosecutor and the Judge repeatedly stressed such refusal, it was held that the State had failed to demonstrate beyond a reasonable doubt that such comments had not contributed to the conviction.

*People v Almestica* (42 NY2d 222), cited in the majority's opinion as authority for the principle that constitutional error may nevertheless be harmless, is, I believe, inapplicable. The trial issues there presented were, firstly, the manner in which the culprits gained entry into the victim's apartment and, secondly, the victim's inability on cross-examination to deter-

mine which of the defendants committed which particular acts during his ordeal. However, the principal issue on appeal, as noted by Chief Judge BREITEL writing for the majority, was the admissibility of the evidence, consisting of the contraband and weapons, found later by a police officer when he stopped a taxicab on mere suspicion.

We are not concerned with vitiating a jury verdict as in *Dunn v Eickhoff* (43 AD2d 580, affd 35 NY2d 698), involving an action in negligence. There the plaintiffs learned of the attorney's disbarment prior to the case reaching the jury, but failed so to inform the court. Noting, I repeat, that the action was civil in nature, Judge WACHTLER, in dissenting, stated (35 NY2d, at p 700): "This court should not condone the participation of a disbarred attorney in court proceedings. Our State's policy on this is a firm one, and the Legislature has seen fit to impose penal sanctions to deter the practice (Judiciary Law, § 486). This court's interest in maintaining the integrity of the judicial process is more immediate and our response should be more direct."

In applying this observation to a criminal proceeding in which defendants have been incarcerated and represented by one who had never been a licensed attorney, I would add a tenfold factor.

I do not believe it is at all germane that this layman may have acted more or less capably than the most skilled lawyer. Surely, one need not expound upon the State's concern in licensing the profession of law. Whether he did so expertly or inexpertly is totally irrelevant. In licensing, the admitting court or State assures and certifies that the licensee has met minimal standards of education and character promulgated and adhered to by his peers over the centuries. I suggest that if we condone what here occurred, we are rendering a grievous disservice to the public and, also, denigrating our honorable and learned pursuit.

I am not unmindful that setting aside these convictions could well open a Pandora's box. The problems could be myriad; but so were those spawned by *Gideon, Miranda,* and hosts of other cases. We have coped with them; we need not despair that we shall be incapable of resolving them juridically and judiciously, be they manifold or singular.

COHALAN and MARGETT, JJ., concur with TITONE, J.; HAW-KINS, J., dissents and votes to reverse the orders and vacate

the judgments of conviction, with an opinion, in which MOL-
LEN, P. J., concurs.

Orders of the County Court, Nassau County, dated July 29,
September 29 and November 22, 1976, affirmed.