People v Thomas (2018 NY Slip Op 07565)





People v Thomas


2018 NY Slip Op 07565


Decided on November 9, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 9, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, CURRAN, AND WINSLOW, JJ.


1016 KA 16-01190

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
LEE THOMAS, DEFENDANT-APPELLANT. 






JAMES S. KERNAN, PUBLIC DEFENDER, LYONS, THE ABBATOY LAW FIRM, PLLC (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT.
MICHAEL CALARCO, DISTRICT ATTORNEY, LYONS (WENDY EVANS LEHMANN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Wayne County Court (Dennis M. Kehoe, J.), rendered July 5, 2016. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, attempted murder in the second degree and criminal possession of a weapon in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, murder in the second degree (Penal Law § 125.25 [1]) and attempted murder in the second degree
(§§ 110.00, 125.25 [1]), arising from an incident at defendant's residence in which he fired a shotgun multiple times at two men, which resulted in the death of one of the men (hereafter, victim). We affirm.
Contrary to defendant's contention, we conclude that County Court properly refused to suppress physical evidence that was seized without a warrant from the driveway of defendant's residence inasmuch as that evidence was in plain view upon arrival of the police on the scene following a 911 call reporting the shooting (see People v Jassan J., 84 AD3d 620, 620 [1st Dept 2011], lv denied 18 NY3d 925 [2012]; People v Evans, 21 AD3d 1317, 1317-1318 [4th Dept 2005], lv denied 6 NY3d 775 [2006]; see generally People v Brown, 96 NY2d 80, 89 [2001]).
Defendant also contends that the court erred in refusing to suppress the statements that he made to the police at his residence before he received his Miranda warnings because he was subjected to custodial interrogation. We reject that contention. "In determining whether a defendant was in custody for Miranda purposes, [t]he test is not what the defendant thought, but rather what a reasonable [person], innocent of any crime, would have thought had he [or she] been in the defendant's position' " (People v Kelley, 91 AD3d 1318, 1318 [4th Dept 2012], lv denied 19 NY3d 963 [2012], quoting People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]). Here, the record of the suppression hearing establishes that the police responded to defendant's residence following the 911 call reporting the shooting and, although defendant was initially asked to back up into the kitchen, the police explained that they simply wanted to be able to safely enter the residence and check the premises. Thereafter, a police officer collectively interviewed defendant, his girlfriend, and two roommates in the kitchen of the residence, defendant was never handcuffed or otherwise restrained, and defendant was free to move during the interview (see People v Rodriguez, 111 AD3d 1333, 1333-1334 [4th Dept 2013], lv denied 22 NY3d 1158 [2014]; People v Ramirez, 243 AD2d 734, 735 [2d Dept 1997], lv denied 91 NY2d 878 [1997], reconsideration denied 91 NY2d 929 [1998]; People v Lavere, 236 AD2d 809, 809 [4th Dept 1997], lv denied 90 NY2d 860 [1997]). Furthermore, although a police officer testified that he would not have allowed defendant to leave upon initially entering the residence, "[a] police [officer's] unarticulated plan has no bearing on the question whether a [*2]suspect was in custody at a particular time . . . [and] the subjective intent of the officer . . . is irrelevant" where, as here, there is no evidence that such subjective intent was communicated to the defendant (People v Jeremiah, 147 AD3d 1199, 1201 [3d Dept 2017], lv denied 29 NY3d 1033 [2017] [internal quotation marks omitted]). We conclude that, under those circumstances, "a reasonable person innocent of any wrongdoing would not have believed that he or she was in custody" (Rodriguez, 111 AD3d at 1334).
Contrary to defendant's further contention, inasmuch as "the initial statement[s were] not the product of pre-Miranda custodial interrogation, the post-Miranda [statements] given by defendant [at the police station] cannot be considered the fruit of the poisonous tree" (People v Murphy, 43 AD3d 1276, 1277 [4th Dept 2007], lv denied 9 NY3d 1008 [2007] [internal quotation marks omitted]). Thus, defendant's related contention that defense counsel was ineffective in failing to raise that ground for suppression of the post-Miranda statements is without merit because "[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success" (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks omitted]).
Upon our review of the videotape of defendant's interrogation at the police station, we conclude that the court properly refused to suppress defendant's written and oral statements made during the interrogation because, contrary to defendant's contention, the record does not establish that those statements were involuntary (see People v Clark, 139 AD3d 1368, 1369-1370 [4th Dept 2016], lv denied 28 NY3d 928 [2016]; People v Salamone, 61 AD3d 1400, 1401 [4th Dept 2009], lv denied 12 NY3d 929 [2009]; People v McWilliams, 48 AD3d 1266, 1267 [4th Dept 2008], lv denied 10 NY3d 961 [2008]; cf. People v Guilford, 21 NY3d 205, 212-213 [2013]).
Defendant also contends that he was deprived of his constitutional right to a public hearing when the court denied his request to view the videotape of the interrogation in open court during the suppression hearing and instead viewed it in chambers before rendering its written decision. That contention is not preserved for our review inasmuch as defendant requested that the court view the videotape in open court on "different grounds, and the court did not expressly decide, in response to protest, the issue[] now raised on appeal' . . . , notwithstanding its mere reference' [during argument] . . . to a matter related to the present issue[]" (People v Cruz, 154 AD3d 429, 429-430 [1st Dept 2017], lv denied 30 NY3d 1059 [2017], quoting People v Miranda, 27 NY3d 931, 932-933 [2016]; see CPL 470.05 [2]; People v Lopez, 185 AD2d 189, 190-191 [1st Dept 1992], lv denied 80 NY2d 975 [1992]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant further contends that the court erred in denying his challenge for cause to a prospective juror. Although defendant preserved that contention for our review (see CPL 270.20 [2]; People v Harris, 19 NY3d 679, 685 [2012]), we conclude that it lacks merit. "A prospective juror may be challenged for cause on several grounds" (People v Furey, 18 NY3d 284, 287 [2011]), including, as relevant here, that the prospective juror "bears some . . . relationship to [counsel for the People or for the defendant] of such nature that it is likely to preclude him [or her] from rendering an impartial verdict" (CPL 270.20 [1] [c]; see People v Scott, 16 NY3d 589, 592-593, 595 [2011]; People v Collins, 145 AD3d 1479, 1479-1480 [4th Dept 2016]). "[N]ot all relationships, particularly professional ones, between a prospective juror and relevant persons, including counsel for either side, require disqualification for cause as a matter of law" (People v Greenfield, 112 AD3d 1226, 1228 [3d Dept 2013], lv denied 23 NY3d 1037 [2014]; see Furey, 18 NY3d at 287). "Trial courts are directed to look at myriad factors surrounding the particular relationship in issue, such as the frequency, recency or currency of the contact, whether it was direct contact, and the nature of the relationship as personal and/or professional . . . or merely a nodding acquaintance' " (Greenfield, 112 AD3d at 1228-1229, quoting People v Provenzano, 50 NY2d 420, 425 [1980]; see Furey, 18 NY3d at 287).
Here, the information before the court established, at most, that there was an occasional, professional relationship between defense counsel and the prospective juror, who worked primarily in legal publishing, arising from defense counsel's position on a school board that had limited control over some portion of the prospective juror's secondary, part-time paid employment and partial volunteer work in the school district's theater program. The record thus establishes that the relationship was "not [a] particularly close one[ and] arose in a professional context[,] and [was] thus not of a type [likely] to preclude [the] prospective juror from rendering [*3]an impartial verdict" (People v Molano, 70 AD3d 1172, 1174 [3d Dept 2010], lv denied 15 NY3d 776 [2010]; see People v DeFreitas, 116 AD3d 1078, 1080 [3d Dept 2014], lv denied 24 NY3d 960 [2014]; cf. Greenfield, 112 AD3d at 1229-1230). Contrary to defendant's related contention, we also conclude that the court, in reaching its determination to deny the challenge for cause, did not violate its obligation to try and determine "[a]ll issues of fact or law arising on the challenge" (CPL 270.20 [2]; cf. People v Guldi, 152 AD3d 540, 543 [2d Dept 2017], lv denied 30 NY3d 1019 [2017]).
Contrary to defendant's additional contention, the court did not deny him the expert judgment of counsel, to which the Sixth Amendment entitles him (see People v Colville, 20 NY3d 20, 32 [2012]), when it elicited defendant's personal consent to confirm that he was in agreement with the position taken by defense counsel that a seated juror should be discharged. The record refutes defendant's contention "that the decision . . . was made solely in deference to defendant, that it was against the advice of [defense] counsel, or that it was inconsistent with defense counsel's trial strategy" (People v Gottsche, 118 AD3d 1303, 1304 [4th Dept 2014], lv denied 24 NY3d 1084 [2014]; see People v Richardson, 143 AD3d 1252, 1254-1255 [4th Dept 2016], lv denied 28 NY3d 1150 [2017]; People v Black, 137 AD3d 1679, 1679-1680 [4th Dept 2016], lv denied 27 NY3d 1128 [2016], reconsideration denied 28 NY3d 1026 [2016]).
Defendant contends that the court erred in denying his motion to exclude from the courtroom during opening statements any of the People's witnesses who may have been present. Although the decision to exclude a witness from the courtroom prior to his or her testimony is within the discretion of the trial court (see People v Baker, 14 NY3d 266, 274 [2010]), "the practice of such exclusion is a time-honored one and should not be abandoned' . . . , particularly where the testimony of the witness[ ] is in any measure cumulative or corroborative' " (People v Felder, 39 AD2d 373, 380 [2d Dept 1972], affd 32 NY2d 747 [1973], rearg denied 39 NY2d 743 [1976], appeal dismissed 414 US 948 [1973]; see People v Cooke, 292 NY 185, 190-191 [1944], rearg denied 292 NY 622 [1944]). Even assuming, arguendo, that the court should have excluded any of the People's witnesses from the courtroom during opening statements in order to prevent such witnesses from learning about the expected testimony of other witnesses (see generally People v Santana, 80 NY2d 92, 100 [1992], rearg dismissed 81 NY2d 1008 [1993]), we conclude that reversal is not warranted because defendant has failed to demonstrate any prejudice resulting from the presence of the only witness specified on the record as being in the courtroom during opening statements, i.e., an investigator who was not an eyewitness to the shooting and merely collected evidence from the scene (see People v Todd, 306 AD2d 504, 504 [2d Dept 2003], lv denied 1 NY3d 581 [2003]; People v Leggett, 55 AD2d 990, 991 [3d Dept 1977]; People v M. J., 42 AD2d 717, 717 [2d Dept 1973]; Felder, 39 AD2d at 380).
We reject defendant's contention that the court erred in refusing to charge the jury with one of his requested justification defenses. Viewing the record in the light most favorable to defendant, we conclude that there is no reasonable view of the evidence from which the jury could have found that defendant reasonably believed that the victim was committing or attempting to commit a kidnapping of defendant's girlfriend (see Penal Law § 35.15 [2] [b]; see generally People v Petty, 7 NY3d 277, 284-285 [2006]; People v Sadler, 153 AD3d 1285, 1286 [2d Dept 2017], lv denied 30 NY3d 1022 [2017]).
Finally, the sentence is not unduly harsh or severe.
Entered: November 9, 2018
Mark W. Bennett
Clerk of the Court